United States District Court
Southern District of Texas
**ENTERED**
November 30, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| JOSEPH B.,[1] | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:19-cv-1285 |
| | § | |
| ANDREW SAUL,[2] | § | |
| Commissioner of Social Security, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## **MEMORANDUM AND ORDER**

Plaintiff seeks judicial review of a final decision of the Commissioner of the

Social Security Administration denying his application for disability insurance

benefits under Title II of the Social Security Act. Before this Court for decision,

pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), are the parties' cross-motions

for summary judgment. ECF Nos. 14, 18. Having reviewed the administrative

record, ECF Nos. 9, 10, the parties' briefs, ECF Nos. 15, 18, and the applicable law,

---

[1]  Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2]  Andrew Saul has been automatically substituted for the previously named defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g).

the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

## I.  BACKGROUND

Plaintiff applied for disability insurance benefits in January of 2014, claiming disability beginning on December 1, 2012 due to the following conditions: left shoulder impingement syndrome; lumbar degenerative disc disease; Osgood-Schlatter disease and osteoarthritis of the right knee/patella; left ankle osteochondritis and fracture; obstructive sleep apnea; cervical degenerative disc disease; bilateral carpal tunnel syndrome; post-traumatic stress disorder; hypertension; and stress fracture of the right tibia. ECF No. 9-7 at 2–5; ECF No. 9-8 at 13. Plaintiff was thirty-seven years old on the alleged disability onset date, ECF No. 9-4 at 49; ECF No. 9-5 at 63, and had previously worked as an assistant construction superintendent, a forklift operator/warehouseman, and a soldier/infantryman, ECF No. 9-3 at 25; ECF No. 9-4 at 48–49.

### *The ALJ's First Decision and the Appeals Council's Remand.*

After the agency denied Plaintiff's claim initially and upon reconsideration, Plaintiff requested a hearing, which was held before the Administrative Law Judge (ALJ) on June 4, 2015. ECF No. 9-3 at 54–89 (transcript of that hearing). On June 26, 2015, the ALJ issued a written decision concluding that Plaintiff was not "under a disability" within the meaning of the Social Security Act. ECF No. 9-4 at 38–50. As relevant to the present suit, the ALJ found, at Step Two of the five-step sequential

process for assessing Social Security disability claims,[3] that Plaintiff had the following severe impairments: "degenerative disc disease; osteoarthritis (knees); left shoulder impingement; obesity; history of traumatic brain injury; and headaches." ECF No. 9-4 at 43. At the RFC assessment stage, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a),[4] with the following additional physical limitations:

> [Plaintiff] can sit up to 6 hours; stand/walk up to 2 hours; can occasionally climb ramps or stairs, but never ropes, ladders, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; ***can occasionally reach overhead***; and ***may use a wheelchair at will***.

ECF No. 9-4 at 46 (emphasis added). As the ALJ noted in the written decision,

---

[3]  The Commissioner uses a five-step inquiry to determine whether a claimant is disabled, asking, in sequence: (1) whether the claimant is presently engaged in substantial gainful activity (Step One); (2) whether the claimant has a severe impairment (Step Two); (3) whether the claimant's impairment meets or equals the severity of an impairment listed in Appendix 1 of the applicable regulations (Step Three); (4) whether the impairment prevents the claimant from performing past relevant work (Step Four); and (5) whether the impairment prevents the claimant from performing any other work (Step Five). *Christian v. Berryhill*, No. 4:15-cv-3714, 2017 WL 1134152, at *6–7 (S.D. Tex. Mar. 27, 2017) (internal citations omitted). Before moving from Step Three to Step Four, the Commissioner assesses the claimant's "residual functional capacity" ("RFC"). The RFC assessment entails a determination, based on all relevant evidence in the record, of the most the claimant can still do despite her physical and mental limitations. The Commissioner uses the claimant's RFC at Step Four to determine whether the claimant can still do her past relevant work, and at Step Five to determine whether the claimant can adjust to any other type of work. *Id.*

[4] The regulation states:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

"occasionally" means "the activity or condition exists from very little up to 1/3 of the time," and "frequently" means "the activity or condition exists from 1/3 to 2/3 of the time." ECF No. 9-4 at 46 n.2 (citing Appendix C-3, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (U.S. Department of Labor, Employment and Training Administration 1993)). At Step Five, the ALJ concluded that Plaintiff could perform "other work that exists in significant numbers in the national economy," namely: light, unskilled work as an office helper, mail clerk, and ship weigher. ECF No. 9-4 at 49–50.

Plaintiff requested review by the Appeals Council, which issued an order vacating the ALJ's decision and remanding the case to the ALJ on October 14, 2015. ECF No. 9-4 at 55–58. As relevant to this appeal, the Appeals Council's order instructed the ALJ to consider the claimant's ability to ambulate effectively as defined in 1.00B2b in 20 CFR Part 404, Subpart P, Appendix 1; consider the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p); and obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14), resolving any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion

4

publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p). ECF No. 9-4 at 57.

### The ALJ's Second Decision.

On remand, the ALJ held a second hearing. ECF No. 9-3 at 33–53 (transcript of February 8, 2016 hearing). In a written decision dated June 30, 2016, the ALJ once again found Plaintiff "not disabled" and denied Plaintiff's disability claim. ECF No. 9-3 at 13–26.[5]

At the RFC assessment stage, the ALJ removed the previous reference to Plaintiff's use of a wheelchair, finding instead that Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [that] the claimant can sit 8 hours in an 8-hour workday; he can stand and/or walk 2 hours in an 8-hour workday; he can occasionally climb ramps and stairs but never climb ropes, ladders, or scaffolding; he can occasionally balance, stoop, kneel, crouch, and crawl; he ***can occasionally perform overhead reaching***; he ***requires the use of a cane to ambulate***; he is limited to performing simple and detailed work; he can have frequent interaction with the public, coworkers, and supervisors; and he cannot perform production/rate pace work.

ECF No. 9-3 at 21 (emphasis added).

Although the ALJ found that Plaintiff was unable to perform any of his past relevant work, ECF No. 9-3 at 25, the ALJ found that, considering Plaintiff's age,

---

[5] The ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease; osteoarthritis of the knees; left shoulder impingement; obesity; history of traumatic brain injury; headaches; depression; and posttraumatic stress disorder." ECF No. 9-3 at 20. But the ALJ found that Plaintiff none of the impairments or combination of impairments met the severity of any listings. ECF No. 9-3 at 20–21.

education, work experience, and residual functional capacity, there were other jobs Plaintiff could perform. *Id*. Specifically, the ALJ relied upon the vocational expert's testimony that Plaintiff would be able to perform the requirements of a telephone solicitor, charge account clerk, and order clerk. ECF No. 9-3 at 26. Based on these findings, the ALJ concluded that Plaintiff had not been *under a disability*, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's second decision. *Id.*

The Appeals Council denied Plaintiff's request for review of the ALJ's second decision. ECF No. 9-3 at 2–12. Plaintiff then commenced the present suit. ECF No. 1.

## II.  Standard of Review

Judicial review of a decision denying benefits to a claimant under the Social Security Act is limited to determining whether (1) "the final decision is supported by substantial evidence" and (2) "the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is "something more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

In reviewing the Commissioner's findings of fact, a court does not reweigh the evidence in the record, nor does it substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). At the same time, however, judicial review of the Commissioner's findings must never be "so obsequious as to be meaningless." *Id.* (internal quotation marks and citation omitted). The substantial evidence standard does not operate as a rubber stamp for the Commissioner's decision, and it involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986). A reviewing court must scrutinize the record as a whole, taking into account whatever in the record fairly detracts from the weight of the evidence supporting the Commissioner's decision. *Cook*, 750 F.2d at 393; *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005) ("A reviewing court may not, however, examine only the evidence favorable to the Commissioner; it must also examine contrary evidence.").

In determining whether the Commissioner used the proper legal standards to evaluate the evidence, a reviewing court looks to whether the Commissioner complied with the Social Security Administration's own rulings and internal procedures. *Newton*, 209 F.3d at 459 ("[A]n agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be

required." (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)); 20 C.F.R. § 402.35(b)(1) ("Social Security Rulings . . . are binding on all components of the Social Security Administration.").

The court also determines whether the Commissioner carefully considered the evidence and whether the Commissioner adequately explained the basis for the decision reached. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (remanding case where "the ALJ failed to consider the evidence carefully" and selectively cited evidence); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."). A court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). Therefore, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455 (citing *Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985)).

As the parties here seek disposition by means of summary judgment, the Court applies Federal Rule of Civil Procedure 56, which requires the movant to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.  Analysis

Plaintiff makes two main arguments in support of his request that this Court

vacate the Commissioner's decision and remand this matter to the agency for rehearing and further administrative proceedings. The first concerns the ALJ's assessment of Plaintiff's residual functional capacity on remand. Plaintiff argues that the ALJ erred because he failed to explain his change in the Plaintiff's RFC limitation from use of a wheelchair at will to use of a cane. ECF No. 15 at 7–19. The second involves the ALJ's analysis at Step Five. Plaintiff asserts that the ALJ erred because he failed to resolve a conflict between the DOT requirements and the vocational expert's testimony about jobs he could perform in light of the RFC limitation that Plaintiff was limited to only occasional overhead reaching. *Id.* at 19–24.

### A. The ALJ Failed to Adequately Explain His Change in RFC Limitation from Plaintiff's Use of a Wheelchair to Use of a Cane.

The ALJ's first decision found that Plaintiff had the residual functional capacity to perform "sedentary work," with certain limitations, including that he "may use a wheelchair at will." ECF No. 9-4 at 46. On remand, however, the ALJ removed any mention of a wheelchair from Plaintiff's RFC. ECF No. 9-3 at 21. Plaintiff contends that the ALJ's second decision is not supported by substantial evidence because the ALJ failed to adequately justify the elimination of the previous finding regarding Plaintiff's use of a wheelchair from his RFC. The Court agrees.

**1. The evidence supports the ALJ's first decision that Plaintiff's use of a wheelchair limited his RFC.**

The record contains an appreciable amount of evidence supporting the ALJ's original finding that Plaintiff's use of a wheelchair limited his RFC. Even before his doctor provided him with a cane and wheelchair in July of 2014, Plaintiff already had a well-documented history of back and knee limitations going back at least eighteen months. *See* Appendix attached summarizing medical records.

In addition to the medical records, Plaintiff's use of a wheelchair was mentioned several times at the first hearing before the ALJ. Plaintiff appeared in a wheelchair at the June 4, 2015 hearing. ECF No. 9-3 at 74. In response to the ALJ's questions, Plaintiff stated that he was able to walk two or three days out of the week and had been using a wheelchair since the previous July, before which he had been walking with difficulty. *Id.* at 74–75. Referring to the July 2014 appointment at which he was prescribed a wheelchair, Plaintiff testified that Dr. Hirani "wanted me to walk forward and I did and my legs buckled out from underneath me." *Id.* at 75. Dr. Hirani told Plaintiff that he "was going to have to use a cane and possibly . . . use a wheelchair," but Plaintiff "didn't want . . . [to] have [his] kids see [him] in a wheelchair and having to use a cane." *Id.* At one point during the hearing, Plaintiff needed to stand up and stretch. *Id.* at 82. In addition, the vocational expert's testimony included discussion of Plaintiff's use of a wheelchair and cane. *Id.* at 87–88.

In his original decision, the ALJ specifically mentioned Plaintiff's use of a wheelchair in his discussion of Plaintiff's RFC, stating that "[a]lthough the claimant presented at the hearing in a wheelchair, the claimant admitted he can walk, and in fact stood for a portion of the hearing." ECF No. 9-4 at 47. The ALJ concluded that Plaintiff's RFC allowed him to perform "sedentary work," with the additional limitation that Plaintiff "may use a wheelchair at will." *Id.* at 46.

### 2. The ALJ's second decision fails to adequately explain why Plaintiff's use of a wheelchair was omitted from his RFC.

In its order remanding the matter to the ALJ, the Appeals Council did not reject the ALJ's inclusion of the wheelchair limitation in Plaintiff's RFC. The Appeals Council wrote only that "the use of a wheelchair is not consistent with an ability to ambulate effectively as defined in 1.00B2b and therefore is not consistent with even a sedentary functional capacity." ECF No. 9-4 at 56.[6] It was the purported

---

[6] The regulation cited by the Appeals Council states:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of

inconsistency between Plaintiff's use of a wheelchair and his capacity to perform sedentary work that the Appeals Council found to be an issue requiring "[f]urther consideration" on remand. *Id.* At the same time, the Appeals Council's remand order did not prohibit the ALJ from removing the wheelchair limitation from Plaintiff's RFC. Eliminating that limitation, after proper consideration, could not have been inconsistent with the Appeals Council's instruction to the ALJ to "[g]ive further consideration to the claimant's ability to ambulate effectively" and to "[g]ive further consideration to the claimant's maximum residual functional capacity." ECF No. 9-4 at 57. Given agency regulations stating that an ALJ "shall take any action that is ordered by the Appeals Council and *may* take any additional action that is not inconsistent with the Appeals Council's remand order," 20 C.F.R. § 404.977(b) (emphasis added), deletion of the wheelchair limitation was squarely within the ALJ's purview on remand.[7]

---

a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b.

[7] Plaintiff argues that the ALJ failed to follow the Appeals Council's remand order. ECF No. 15 at 15–16. The Court notes that there does not appear to be any binding precedent on the question whether an ALJ's failure to comply with an Appeals Council order provides a basis for a federal court to reject the agency's final decision. In an unpublished, non-precedential opinion, a panel of the Fifth Circuit found a claimant's contention that an ALJ's "failure to comply with an Appeals Council order constitutes reversible error" to be "without merit" because the caselaw cited by the

The ALJ's second decision reached a new RFC assessment that eliminated the wheelchair limitation entirely without a specific discussion of the reason for the change. In the written decision, the ALJ discussed Plaintiff's use of a wheelchair and/or ability to ambulate in three places. Although the ALJ was "not required to discuss each and every piece of evidence in the record," he was required to "consider[] all of the relevant evidence in assessing Plaintiff's RFC." *Christian*, 2017 WL 1134152, at *12.

In the first passage, the ALJ states:

> treatment notes from the Veterans Affairs (VA) Hospital show the **_claimant requested_** a cane and wheelchair for knee pain in July 2014 (Exhibit 10F). However, a physical examination approximately one-month prior dated June 25, 2014, showed the claimant ambulated with an antalgic gait but without any assistive device. At that time, it was noted the claimant had full functional strength of all muscle groups and he had full range of motion of the cervical spine without pain (Exhibit 9F).

ECF No. 9-3 at 23 (emphasis added).

This passage contains several infirmities. First, there is no support for the ALJ's assertion that Plaintiff *requested* a cane or a wheelchair in July of 2014. On

---

claimant was not "mandatory authority." *Henderson v. Colvin*, 520 F. App'x 268, 273 (5th Cir. 2013) (noting that claimant cited three "district court opinions from outside the Fifth Circuit, and none is published"). The panel stated that "the clear rule is that remand is warranted only where the ALJ's decision fails to apply the proper legal standard or the decision is not supported by substantial evidence." *Id.* The court noted that "[h]ad the Appeals Council thought that the ALJ had not complied with its remand order, the Appeals Council could have granted Henderson's request for review, which it denied." *Id.* at 274. Likewise, here the Appeals Council denied the Plaintiff's appeal. ECF No. 9-3 at 2-7.

the contrary, the record shows that Dr. Hirani had to *coax* Plaintiff into accepting the cane and wheelchair, ECF No. 10-9 at 97, and that it was Dr. Hirani who prepared the request that Plaintiff be provided with those devices. ECF No. 10-10 at 110.[8] The ALJ's decision does not indicate how this erroneous characterization factored into the new RFC assessment.[9]

Second, the ALJ did not accurately portray the record of Plaintiff's June 25, 2014 medical visit. *See* ECF No. 10-9 at 105–111. The nurse practitioner ("NP") who examined Plaintiff on that date reported his gait as "significantly antalgic," writing that Plaintiff "favor[ed] [the] right leg, right foot turned inward, genu varum noted; no assistive device." *Id.* at 110. The NP reported Plaintiff's ambulation as "independent but with pain." ECF No. 10-9 at 109. As the ALJ alluded to, the NP wrote that Plaintiff "moves all extremities well, full functional strength muscle strength," and described the "cervical spine" as "full ROM without pain." ECF No. 10-9 at 110. However, the ALJ failed to mention the record's references to the two

---

[8] There is no merit to the Commissioner's argument that because Dr. Hirani wrote that the "reason for the request" of the wheelchair was "complaints and findings," the ALJ's "inference" that Plaintiff "requested" a wheelchair was therefore "reasonable." ECF No. 18 at 7. The evidence is clear that the wheelchair and cane were prescribed to Plaintiff without his requesting them.

[9] Plaintiff argues that the ALJ was required to make findings regarding the extent to which Plaintiff's wheelchair is medically required, and as to the work-related limitations that result from the need for that device, as Social Security Rulings 96-9p and 96-8p require. ECF No. 15 at 16–19. Because the Court concludes that the Commissioner's exclusion of the wheelchair limitation from Plaintiff's RFC is harmless error on the basis that the vocational expert testified that Plaintiff could perform the jobs in a wheelchair, it is unnecessary to reach this issue.

areas that had given Plaintiff the most trouble: his lumbar spine and knees. The record described Plaintiff's lumbar spine as "hypersensitive to light touch," noted that Plaintiff "very minimally performed ROM and reported significant pain with attempt," noted that the examiner was unable to perform one test "due to pain and stiffness," and noted that Plaintiff's "lumbar musculature is very rigid." ECF No. 10-9 at 111. The NP also wrote that Plaintiff's right knee was "painful to palpation below patella; positive Hoffa's sign, good flexion, unable to fully extend due to pain." ECF No. 10-9 at 111.

The second relevant passage in the ALJ's decision discusses Plaintiff's ability to ambulate as follows:

> More recently, the claimant presented to the VA Hospital on December 29, 2015, with knee pain that had reportedly worsened in the past few months. It was also noted that recent diagnostic imaging of the knee dated November 6, 2015, demonstrated degenerative changes. However, the claimant reported he wore a knee brace and it helped. In addition, upon examination it was noted the claimant ambulated independently (Exhibit 14F).

ECF No. 9-3 at 23.

Evidence that Plaintiff's right knee pain continued to worsen even after he had been given a wheelchair and that that knee had undergone degenerative changes tends to support the inclusion of the wheelchair limitation in Plaintiff's RFC, not its elimination. ECF No. 10-12 at 70–72. Although the record of Plaintiff's December 2015 medical visit stated that Plaintiff "wears a knee brace that helps" and

"ambulated independently," no indication was given as to how much pain relief the brace provided or how effective Plaintiff's ambulation was. *Id.* at 70.

The third passage in the ALJ's decision discusses Plaintiff's wheelchair use and ambulation, stating:

> At the hearing, the claimant testified that he suffers from right knee pain and posttraumatic stress disorder. Due to his impairments, the claimant testified he is confined to a wheelchair. However, the claimant testified he has only recently been confined to a wheelchair as a result of knee pain; he had previously only used a wheelchair when he experienced severe back pain. When not using a wheelchair, the claimant testified he ambulated with a cane, which is consistent with the residual functional capacity assigned above. Moreover, per the most recent function report signed by the claimant, the claimant reported he can drive a car; he can shop in stores for food; he can pay bills, count change, and handle a savings account; he goes to church or a friend's house on a regular basis; he has no problems completing tasks; he can follow both written and spoken instructions; and he does **NOT** require the use of crutches, a cane, a walker, or a wheelchair to ambulate (Exhibit 10E). Overall, the description of the symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive.

ECF No. 9-3 at 24.

The "most recent function report" referred to by the ALJ is dated June 10, 2014 and was *before* the Plaintiff was prescribed the wheelchair and cane. ECF No. 9-8 at 67. Thus, the fact that Plaintiff did not check the boxes indicating that he used those devices is unremarkable and lends no support for the notion that Plaintiff can effectively ambulate with only a cane. *Id.* at 66.

At the February 8, 2016 hearing, Plaintiff testified that the cartilage in his right knee was gone and could not withstand any pressure, he was awaiting knee replacement surgery, and for that reason was presently "confine[d]" to the wheelchair. ECF No. 9-3 at 40-41. Plaintiff stated that he had previously only used the wheelchair when his back hurt "really bad" and that he could walk up to 100 feet with a cane before his legs would start giving out and his back would seize up. *Id.* at 42. At the first hearing, Plaintiff testified that he was able to walk only two or three days out of the week and otherwise used the wheelchair. Before having use of the canes or wheelchair, Plaintiff testified that he walked with difficulty. ECF No. 9-3 at 74–75. The record therefore shows a worsening of Plaintiff's condition, some of which may be alleviated after his knee surgery, but the need for his wheelchair largely was based on his back pain. Read in light of this testimony, the ALJ's statement that "[w]hen not using a wheelchair, the claimant testified he ambulated with a cane, which is consistent with the residual functional capacity assigned above," avoids the central question, i.e., whether the evidence of Plaintiff's use of a wheelchair requires that it be included as a limitation in his RFC. Like the written decision, the transcript of the February 8, 2016 hearing also fails to state the reasons the ALJ reached a new RFC assessment. *See* ECF No. 9-3 at 50 (ALJ refused to explain reason for changing RFC when challenged by Plaintiff's representative).

The ALJ's decision must stand or fall with the reasons set forth in his written

opinion. *Newton*, 209 F.3d at 455. Therefore, the ALJ must adequately explain the reasons for his decision, here a change in the RFC limitation, since the Court may only affirm the decision on the reasons given. *Copeland*, 771 F.3d at 923. Because the ALJ changed the RFC without explaining the reason for changing the limitation that Plaintiff may use a wheelchair at will to use a cane, the Court has no basis to affirm the change. Given the lack of stated reasons for his decision, and the infirmities in his analysis of the records supporting Plaintiff's use of the wheelchair, the Court cannot say that substantial evidence supports the ALJ's RFC finding. *Christian*, 2017 WL 1134152, at *12.[10]

### 3. This error was harmless.

To obtain remand, Plaintiff must have been prejudiced by the ALJ's error. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981); *Ramirez v. Saul*, No. 4:18-cv-2504, 2020 WL 1853749, at *40 n.20 (S.D. Tex. 2020). "In Social Security cases, prejudice exists when the ALJ might have reached a different conclusion absent the error." *Temple v. Saul*, No. 4:19-CV-3320, 2020 WL 6075644, at *5 (S.D. Tex. Oct. 14, 2020).

Here, despite the ALJ's failure to include the wheelchair as an RFC limitation, Plaintiff's attorney cross-examined the vocational expert at the second hearing on

---

[10] There is no merit to the Commissioner's argument that the record did not demonstrate Plaintiff's need for a wheelchair. ECF No. 18 at 7. Because the Court finds that the ALJ's error was harmless, it need not address the Commissioner's specific arguments.

the use of a wheelchair. The vocational expert repeatedly testified that, since the jobs were sedentary and required sitting, Plaintiff could perform all three jobs in a wheelchair. ECF No. 9-3 at 46, 49-50, 51. She testified that, whether the Plaintiff was in a chair the employer provided or a wheelchair, it made no difference to his ability to perform the job. *Id.* at 49-50. To the extent the Plaintiff claims otherwise, he has failed to adequately brief this issue. ECF No. 15 at fn. 8. Therefore, even if the ALJ had included the wheelchair as a limitation, it would not have changed the decision.

### B. The ALJ Properly Relied on Vocational Expert Testimony at Step Five and His Finding Is Supported by Substantial Evidence.

At Step Five, the ALJ must decide whether an impairment prevents the claimant from performing any other work. In making that determination, the ALJ uses the claimant's RFC (along with his age, education, and work experience) to determine whether the claimant can adjust to any other type of work. 20 C.F.R. § 404.1520(a)(4)(v). Importantly, at Step Five, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial work in the national economy; only if the Commissioner makes that showing does the burden shift back to the claimant to rebut that finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). In making the necessary findings at Step Five, the ALJ uses the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of

Occupational Titles (SCO),[11] and may also use the testimony of a vocational expert. SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

At the hearing on remand, the ALJ asked the vocational expert whether any jobs would be available to a hypothetical person of the same age, education, and work history as Plaintiff and who had the same RFC as Plaintiff. ECF No. 9-3 at 42–43. Mirroring his ultimate assessment of Plaintiff's RFC, the ALJ's hypothetical limited Plaintiff to, *inter alia*, "occasional" performance of "overhead reaching." *Id.* at 42; ECF No. 9-3 at 21. The vocational expert replied that the following jobs were available: telephone solicitor (DOT #237.367-046), charge account clerk (DOT #205.367-014), and order clerk (DOT #209.567-014). ECF No. 9-3 at 43. The ALJ's decision incorporated this testimony as into his Step Five findings. ECF No. 9-3 at 26.

Plaintiff argues that the ALJ's Step Five findings are erroneous because the ALJ failed to resolve inconsistencies between the DOT and the vocational expert's testimony. Plaintiff points to an apparent conflict between the DOT description of these three jobs and the vocational expert's testimony. The first aspect of this conflict involves the frequency of reaching required by the jobs and the maximum frequency of reaching permitted by Plaintiff's RFC. The vocational expert's testimony was

---

[11] A copy of the SCO is available at
http://onlineresources.wnylc.net/docs/SelectedCharacteristicsSearch121110.pdf

based on a hypothetical person with an RFC limitation of "occasional" performance of overhead reaching (i.e., from very little up to 1/3 of the time). ECF No. 9-3 at 42. The second aspect of this conflict involves the direction of the reaching. Relying mostly on authority outside the Fifth Circuit, Plaintiff argues that the ALJ must ask about *any possible conflict* between the vocational expert's testimony and the DOT, and absent such an inquiry, there is not substantial evidence to support the Commissioner's burden of establishing that jobs exist that Plaintiff can perform. ECF No. 15 at 21-24.

Plaintiff is correct that a vocational expert's occupational evidence generally should be consistent with the occupational information supplied in the DOT. Social Security Ruling ("SSR") 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). SSR 00-4P states that the adjudicator has an affirmative responsibility to ask about any possible conflict. *Id.* at *4. At the beginning of the hearing, the ALJ asked the vocational expert if her testimony would be consistent with the DOT and to let the ALJ know if she gave an opinion which conflicts with the DOT. SSR 00-4P. The vocational expert said that she would. ECF No. 9-3 at 38. Plaintiff acknowledged the ALJ made this inquiry and makes no objection, but states that the ALJ's failure to resolve the inconsistency between the DOT's frequent reaching and the RFC only occasional overhead reaching was deficient. ECF No. 15 at 23. To the extent the ALJ failed to drill down on any possible conflicts after the vocational expert gave

her testimony, it is an procedural error that is considered under the harmless-error standard, on which Plaintiff bears the burden of proof. *Ruffin v. Colvin*, No. 3:16-cv-18, 2017 WL 536549, * at 3 (S.D. Mi. February 8, 2017). The question then becomes whether Plaintiff has shown a conflict in this case. *Id.*

In addressing this precise situation, the Fifth Circuit has recognized that "the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey*, 230 F.3d at 145 (quotations omitted). The Fifth Circuit has warned "against giving DOT job descriptions a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.*

A direct conflict between vocational expert testimony and the DOT may arise when the vocational expert's testimony concerning the exertional or skill level of a job is facially different from the description of the job found in the DOT. *Id.* When a "direct and obvious conflict" exists between the DOT and the vocational expert's testimony, the ALJ must explain or resolve the conflict. *Id.* If the ALJ does not resolve the conflict, the weight of the vocational expert's testimony is lessened such that reversal and remand for lack of substantial evidence usually follows. *Id.* at 146.

On the other hand, when a conflict is implied or indirect, the ALJ can accept and rely upon the vocational expert's testimony provided the record reflects an

adequate basis for doing so. *See id.* at 146; *see also Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 613 (E.D. Tex. 2009) (affirming Commissioner's decision to rely on vocational expert testimony despite implied conflict where adequate evidence supported vocational expert testimony). This is consistent with the ALJ's responsibility under SSR 00-4P, which requires the adjudicator to elicit a reasonable explanation before relying on vocational expert testimony in conflict with the DOT. SSR 00-4P, 2000 WL 1898704, at *2.

In this case, there is no direct and obvious conflict between the DOT and the vocational expert's testimony. The DOT's narrative description for the three jobs does not specifically state, or otherwise indicate, that overhead reaching is required. Rather, the DOT description of the three jobs the ALJ found Plaintiff capable of performing, state that those jobs require "frequent" reaching (i.e., 1/3 to 2/3 of the time). DOT 237.367-046, 1991 WL 672194 (telephone quotation clerk requires "Reaching: Frequently"); DOT 205.367-014, 1991 WL 671715 (charge account clerk requires "Reaching: Frequently"); DOT 209.567-014, 1991 WL 671794 (order clerk requires "Reaching: Frequently"). However, the SCO defines "reaching" as "extending hand(s) and arm(s) in any direction." SCO, Appendix C. Thus, the DOT/SCO describe the jobs as requiring frequent reaching, which can be in any direction.

Consequently, federal district courts in the Fifth Circuit have concluded that there is no direct conflict between the vocational expert's testimony and the DOT because the DOT does not describe any job duties that would *require* overhead reaching. *Tracy D v. Comm'r of SSA*, 2019 WL 47478124, *3 (N.D. Tex. Sept. 27, 2019) (citing *Sherron F. v. Berryhill*, 2018 WL 4680565, at *4 (N.D. Tex. Sept. 28, 2018) (holding there is no conflict between vocational expert's opinion that a person limited to occasional overhead reaching can work a as correspondence clerk and billing clerk and the DOT where the DOT's descriptions for those jobs are silent as to what type of reaching is required); *Gutierrez v. Colvin*, 2016 WL 4056067, at *1 (9th Cir. July 29, 2016) (holding there is no apparent conflict between the vocational expert's conclusion that an individual with an inability to reach above shoulder level with her right hand/arm could perform cashier work and the DOT's generic job description requiring frequent reaching); *Rodriguez v. Colvin*, 2015 WL 778852, *4 (W.D. Tex. Feb. 23, 2015) (no direct or obvious conflict between vocational expert and DOT where nothing in DOT job description indicated overhead reaching required for job); *Carey*, 230 F.3d at 146 (finding there was no conflict with the DOT because the DOT did not state that the job required two hands); and *Ridenhour v. Astrue*, 2009 WL 77765, *13 (N.D. Tex. Jan. 12, 2009) (finding no obvious conflict where although reaching was required for job, the DOT did not specify the job must be performed by the dominant hand or arm or require bilateral use of the

24

arms and hands)); *accord Calvert v. Comm'r of SSA*, 2019 WL 1317313, *3 (N.D. Tex. Mar. 22, 2019) (affirming decision of ALJ that relied on vocational expert testimony that job could be performed with only occasional overhead reaching, where DOT description requires frequent reaching but does not say overhead reaching).

Recently, in *Calvert*, the court examined the impact of the conflict between a limitation of occasional overhead reaching and frequent reaching in all other directions. 2019 WL 1317313, *3. Relying on *Carey*, the court found the vocational expert's testimony that the job could be performed with only occasional overhead reaching and frequent reaching in all other directions constituted substantial evidence to support the ALJ's finding. *Id.*

In this case, the ALJ did not elicit such specific testimony from the vocational expert. Nonetheless, according to the Fifth Circuit, in the case of an indirect or implicit conflict, such as this, counsel for claimant is given the opportunity to cross-examine the vocational expert on the effect of the claimant's limitation on his ability to perform the identified jobs. *Carey*, 230 F.3d at 146.  If counsel fails to elicit such testimony on cross, the Fifth Circuit has instructed that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed

sufficient to merit adversarial development in the administrative hearing." *Id.* at 146-47.

Plaintiff's counsel was given the opportunity to cross-examine the vocational expert and bring any discrepancy to the vocational expert's and ALJ's attention. *Carey*, 230 F.3d at 146. Had counsel done so, the ALJ could have elicited a further explanation from the vocational expert. Although counsel questioned the vocational expert at length about the use of a wheelchair, he did not raise the issue of any conflict regarding the RFC's occasional overhead reaching limitation, the jobs' frequent reaching requirements, and the DOT/SCO reaching means in any direction definition. ECF No. 9-3 at 46-52. As the Fifth Circuit instructed, the Court declines to reverse the ALJ's determination on the basis of an implied conflict between the vocational expert's testimony and the DOT when the vocational expert's testimony that Plaintiff could perform the identified jobs was unchallenged in this respect. *Carey*, 230 F.3d at 146-47; *accord Ruffin*, 2017 WL 536549, at *7 (collecting cases showing that *Carey* remains good law even though decided before SSR 00-4P, and finding implied or unexplained conflict does not require remand because plaintiff failed to raise it before the ALJ); *Moore v. Berryhill,* No. 3:16-cv-035, 2017 WL 4351757, *9 (S.D. Tex. Sept. 29, 2017) (finding failure to cross-examine waived any error when ALJ relied on vocational expert who testified there was no conflict with the DOT).

## IV.  Conclusion

Therefore, it is **ORDERED** as follows: Plaintiff's motion for summary judgment is **DENIED**; Defendant's motion for summary judgment is **GRANTED**; the ALJ's decision denying the Plaintiff benefits is **AFFIRMED**; and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Signed on November 30, 2020, at Houston, Texas.

**Dena Hanovice Palermo**
**United States Magistrate Judge**

## APPENDIX OF MEDICAL SUMMARY

1.   In January of 2013, Dr. Bill G. Berryman, M.D., treated Plaintiff for lower back pain and bilateral lower extremity radiating pain, which ranged in severity from 8 out of 10 to 10 out of 10 and interfered with Plaintiff's walking, sitting, and standing. ECF No. 9-10 at 27. Dr. Berryman noted that Plaintiff had instability and pain in his right knee and that he had to wear a knee brace and otherwise could not walk up and down stairs. *Id.* at 29. Dr. Berryman also noted an April 2012 MRI of Plaintiff's lumbar spine which showed disc bulges and spinal stenosis. *Id.* at 30. In addition, Dr. Berryman noted that Plaintiff had received lumbar steroid injections and physical therapy, neither of which helped, and that the pain had gotten worse over time. *Id.* Dr. Berryman administered steroid injections to Plaintiff in January and February of 2013, noting that the January injections provided partial relief for one week. ECF No. 9-10 at 6.

2.   In March of 2013, Dr. Berryman performed a radiofrequency ablation on Plaintiff's spine, which provided relief for two-and-a-half hours. ECF No. 9-12

at 30. One week later, Plaintiff returned with increased pain, particularly when sitting, standing, and walking. *Id.* at 26. Dr. Berryman noted "excruciating tenderness" and spasms upon physical examination. *Id.* Dr. Berryman performed another radiofrequency ablation later that month. *Id.* at 22.

3.      In April of 2013, Plaintiff returned to Dr. Berryman and was observed as having a "shuffling and irregular gait" and increased pain. ECF No. 9-12 at 18–19. That same month, Plaintiff attended a neurosurgery consultation with Dr. Michael Gorum, M.D., who noted that Plaintiff's lower back pain was aggravated by driving, lower back movement, twisting, bending, sitting, standing for ten minutes and walking over 300 feet. ECF No. 10-3 at 57. However, Dr. Gorum advised that surgery was unlikely to benefit Plaintiff and that he should continue with nonoperative treatment. *Id.* at 59.

4.      In May of 2013, Plaintiff underwent a medical evaluation board to assess his fitness for military duty. ECF No. 9-14 at 26. Records of that examination note that Plaintiff had a painful cervical spine range of motion with flexion and right knee pain with flexion. *Id.* at 27–28. The report concluded that Plaintiff was unable to return to military duty due to left shoulder impingement syndrome, lumbar degenerative disc disease, right knee Hoff's pad impingement syndrome and Osgood-Schlatter's and osteoarthritis of the knee/patella, and left ankle osteochondritis and nonunion fracture. *Id.* at 32. The report stated that while Plaintiff's symptoms might improve outside of the military environment, given the "degenerative nature and severity of his condition," it was likely that he would have continued flare-ups even in civilian life. *Id.* at 35.

5.      Plaintiff attended a follow-up visit with Dr. Berryman in July of 2013 reporting new complaints of increased pain radiating down his lower extremities. ECF No. 10-3 at 49. In September of 2013, Plaintiff underwent a spinal cord stimulator trial. *Id.* at 31. By December, however, Plaintiff's pain was worsening with radiation to the lower extremities and throbbing, burning, aching, and sharp attributes which interfered with his sleep and work. *Id.* at 12. Examination revealed a limited range of motion of the lumbar spine with pain upon movement. *Id.* at 14. Records state that Plaintiff was still awaiting a permanent spinal cord stimulator implant in December and that Dr. Berryman ordered him an LSO brace for additional support. *Id.* at 14–15.

6.      In February of 2014, Plaintiff underwent an MRI of the left knee, which showed mild Hoffa fat pad impingement and findings suggestive of iliotibial band syndrome. ECF No. 10-8 at 65. Plaintiff continued to experience pain. ECF No. 10-7 at 13. He had still not received approval for the permanent spinal cord stimulator,

and he continued to experience pain levels of 8 out of 10. *Id.* Dr. Berryman performed a medical branch block at the left lumbar facet joints, which provided Plaintiff some pain relief. ECF No. 10-7 at 6.

7.      In June of 2014, Plaintiff, having recently moved to Texas, was referred for an orthopedic consultation due to his knee pain and physical therapy for his lumbar spine issues. ECF No. 10-10 at 9.

*8.*      On July 16, 2014, Plaintiff was seen by Dr. Kamal H. Hirani, M.D. A record of that visit notes Plaintiff's continued pain and limited mobility, also stating that Plaintiff had refused a cane in the past. ECF No. 10-9 at 94. The record goes on to note that "after much coaxing . . . pat[ient] agreed to take cane and wc [wheelchair] to avoid falls." *Id.* at 97. Another medical record from the same date shows that Dr. Hirani requested, through the VA Hospital, that Plaintiff be provided with a "basic stock issue wheelchair." ECF No. 10-10 at 110. Next to "reason for request" is written "(Complaints and findings)," and the "provisional diag[nosis]" is recorded as "knee pain." *Id.*